## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TIMOTHY KOBELIA,<br>94800 Muskie Lane<br>Moose Lake, MN 77567;<br><br>KEVIN P. TILLEY,<br>1 Sarracenia<br>Rancho Santa Margarita, CA 92688;<br><br>     Plaintiff,<br><br>  v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001;<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530-0001;<br><br>    Defendants. | Civil Action No. 24-2542 |

## COMPLAINT

## PRELIMINARY STATEMENT

Plaintiffs Timothy Kobelia and Kevin P. Tilley ("Plaintiffs") bring this action against Defendants Federal Bureau of Investigation ("FBI") and U.S. Department of Justice ("DOJ").

Plaintiff Kobelia ("Kobelia") served as an FBI special agent for nineteen years, primarily conducting criminal investigations. He received multiple U.S. Attorney awards and a citation from the FBI Director for conducting a child sex trafficking investigation during the Super Bowl in 2014. In 2021, Kobelia transferred to FBI Headquarters as a supervisory special agent, where he

1

was assigned to the Criminal Covert Operations Unit. In April 2022, Kobelia transferred to FBI Security Division ("SecD") at the request of the division's acting Deputy Assistant Director. He was eligible, otherwise referred to as having a "clearance," to access Top Secret classified information.

Shortly after his arrival to SecD, Kobelia observed that the FBI was abusing the security clearance process. He made protected disclosures under the FBI whistleblower protection statutes and regulations, 5 U.S.C. § 2303 and 28 C.F.R. § 27.2. Approximately two months after telling an FBI SecD manager that he believed the manager's use of the security clearance suspension and revocation process against an employee based on his national origin was improper discrimination, Kobelia's security clearance was suspended. The reported basis for the clearance suspension was that, several months earlier, Kobelia had forwarded to a fellow FBI employee friend the image of an email regarding lunchtime health and wellness activities for SecD employees that included "Lunch and Coloring" and "Office Yoga." The next day a former FBI employee who routinely criticizes the FBI tweeted a similar image. Kobelia did not authorize, nor did he intend for, any image to be shared with the former FBI employee or publicly released. The FBI used the suspension of Kobelia's eligibility to access classified material as a basis to suspend him indefinitely from his employment with the FBI without pay and ceased any medical benefits.

Plaintiff Tilley ("Tilley") served as an FBI special agent investigating crimes against children and human trafficking. Tilley also had a clearance to access Top Secret classified information. However, he had no need to access classified information in his duties conducting purely criminal investigations wholly unrelated to national security. Tilley was accused of wrongdoing. He was investigated by local authorities who declined prosecution, but an internal DOJ investigation continued. After the local declination decision, instead of taking disciplinary

action against him, the FBI suspended Tilley's clearance to access classified material. The FBI used the suspension of Tilley's eligibility to access classified material as a basis to suspend him indefinitely from his employment with the FBI without pay and ceased any medical benefits.

Even though the FBI has the authority under statute to put employees on paid investigative leave, the FBI did not do so with the Plaintiffs. While the Plaintiffs are suspended from their duties as federal employees and receive no compensation from the FBI, the FBI claims it has the authority to restrict their ability to take another job, including anything that could potentially relate to law enforcement. The FBI has refused to grant Tilley permission to take another job under DOJ regulations and the FBI has refused to send his request for a waiver from employment restrictions to DOJ without forcing Tilley to take actions that would put his non-DOJ employment at risk.

The Plaintiffs seek declaratory and injunctive relief.

In support of this action, upon personal knowledge as well as information and belief, the Plaintiffs allege the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 28 U.S.C. § 1361, as this action arises under the First and Fifth Amendments to the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. §§ 706(1),(2)(A),(B), and (C), to challenge unlawful actions of an agency and officers of the United States.

2.      Sovereign immunity for non-monetary relief is waived by 5 U.S.C. § 702, and by the fact that the Defendants acted in violation of constitutional rights. This Court may award injunctive relief pursuant to its inherent equitable jurisdiction and declaratory relief under the Declaratory Judgment Act, 5 U.S.C. § 2201.

3.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391.

**PLAINTIFFS**

4.     Plaintiff Timothy Kobelia ("Kobelia") is a citizen of the United States. He resides in Moose Lake, MN.

5.     Plaintiff Kevin P. Tilley ("Tilley") is a citizen of the United States. He resides in Rancho Santa Margarita, CA.

**DEFENDANTS**

6.     Defendant Federal Bureau of Investigation ("FBI") is the agency that employed the Plaintiffs and claims that it has the authority to subject them to outside employment regulations when they are indefinitely suspended from FBI duties without pay. The FBI is headquartered in Washington, DC.

7.     Defendant U.S. Department of Justice ("DOJ") is the parent department of the FBI. It promulgates regulations restricting outside employment of DOJ employees, including FBI employees, and reviews requests for waivers from those regulations.

**FACTS**

**I.  KOBELIA FBI EMPLOYMENT AND SUSPENSION FROM DUTY.**

8.     On January 23, 2005, Kobelia entered on duty as an FBI special agent. He is not a preference-eligible veteran.

9.     Kobelia was deemed eligible to access Top Secret classified national security information, i.e. granted a "clearance," when he entered on duty with the FBI.

10.     Although Kobelia does not have a copy of his signed FBI employment agreement, he executed this agreement to accept employment with the FBI. Nothing in the FBI employment agreement states that FBI employees are required to maintain their eligibility/clearance to access classified information.

11.     During his career, Kobelia primarily conducted criminal investigations. He

received multiple U.S. Attorney awards and a citation from the FBI Director for conducting a child sex trafficking investigation during the Super Bowl in 2014.

12.     In 2021, Kobelia transferred to FBI Headquarters as a supervisory special agent, where he was assigned to the Criminal Covert Operations Unit. In April 2022, Kobelia transferred to FBI Security Division ("SecD") at the request of the division's acting Deputy Assistant Director.

13.     SecD is responsible for, among other things, investigating and adjudicating FBI employees' security clearance matters, including suspending and revoking their clearances.

14.     While at SecD, Kobelia made protected disclosures under the FBI whistleblower protection statutes and regulations, 5 U.S.C. § 2303 and 28 C.F.R. § 27.2, about SecD's abuses of the security clearance suspension and revocation process.

15.     During late March or April 2023, Kobelia received an email regarding lunchtime health and wellness activities for SecD employees that included "Lunch and Coloring" and "Office Yoga." SSA Kobelia sent a picture of the email to a fellow FBI employee. The next day, a former FBI employee who routinely criticizes the FBI tweeted a similar image. Kobelia did not authorize, nor did he intend for, any image to be shared with the former FBI employee or publicly released.

16.     During June or July 2023, Kobelia and other employees met with an FBI SecD assistant section chief ("ASC"), whom he believed routinely abused the security clearance suspension and revocation process. The ASC was against reinstating the clearance of an employee, even though the basis for the suspension and revocation of the employee's clearance was his national origin, and Kobelia told the manager he believed the suspension and revocation was improper discrimination. Kobelia's Unit Chief also advocated in favor of reinstating the employee's clearance. The following day, the ASC entered negative performance "check-ins" for Kobelia and his Unit Chief in the FBI's personnel system. His Unit Chief was forced out of FBI

employment by the end of September 2023.

17.     On September 20, 2023, Kobelia was interviewed by SecD investigators about the image of the health and wellness activities that had been publicized. Kobelia acknowledged that he had sent an image of the email to an FBI employee friend, but he denied sharing it with the former FBI employee who publicized it. SecD investigators told him that his clearance was being suspended not just for the release of the image but also for "performance" issues and his "attitude." Kobelia took a polygraph examination which indicated no deception when he denied that he had sent the image to the former FBI employee, intended it to be sent to him, or intended to embarrass the FBI.

18.     On September 20, 2023, Kobelia was given a letter from FBI Executive Assistant Director Timothy Dunham notifying Kobelia of Dunham's decision to suspend Kobelia's Top Secret security clearance. The letter further notified him that the

> suspension of [his] security clearance is based on security concerns related to Adjudicative Guideline E – Personal Conduct, and Guideline K - Handling Protected Information of the National Security Adjudicative Guidelines….

> [SecD] recently learned of allegations you may have accessed and released FBI information without authorization….

> The suspension of your clearance will continue until the FBI investigation of the underlying matter is completed….

> The suspension of an employee's access to classified information results in loss of access to controlled FBI space. Accordingly, while your clearance is suspended, you will not be allowed access to FBI space. In addition, you are reminded that while on suspension, you may not represent yourself as an FBI employee, and your authority to fulfill the duties and responsibilities of your position is also suspended.

19.     Kobelia was subsequently indefinitely suspended from duty with the FBI without pay on September 20, 2023.

20.     Kobelia used his accrued annual leave while suspended. He last received pay from

the FBI for a pay period ending April 20, 2024.

## II.  TILLEY FBI EMPLOYMENT AND SUSPENSION FROM DUTY.

### A.      TILLEY'S FBI EMPLOYMENT AND ADMINISTRATIVE LEAVE.

21.     During July 2018, Tilley entered on duty as an FBI special agent. He is not a preference-eligible veteran.

22.     Tilley was deemed eligible to access Top Secret classified national security information, i.e. granted a "clearance," when he entered on duty with the FBI.

23.     Although Tilley does not have a copy of his signed FBI employment agreement, he executed this agreement to accept employment with the FBI. Nothing in the FBI employment agreement states that FBI employees are required to maintain their eligibility/clearance to access classified information.

24.     After completing new agent's training at Quantico, Virginia, Tilley was assigned to the FBI's field office in Seattle, Washington ("Seattle Division") where he was assigned to investigate crimes against children and human trafficking.

25.     Although Tilley had a security clearance, he was assigned to investigate purely criminal matters wholly unrelated to national security. In that assignment, he did not have a need-to-know to access classified material in order to perform the lawful duties to which he was assigned.

26.     On or about March 14, 2021, Tilley was notified by Seattle Division management that a complaint had been filed against him. Tilley was placed on administrative leave. While on administrative leave, Tilley still received his salary and benefits.

27.     Approximately two weeks later, Tilley was notified that he would be taken off administrative leave and was allowed to return to full duty. Tilley returned to his office and

engaged in his normal duties.

28.     During June 2021, Tilley was interviewed by investigators from the DOJ Office of the Inspector General ("OIG") and a detective from the Seattle Police Department.

29.     During September 2021, Tilley's legal counsel was notified by the OIG that the Seattle Police Department investigation was closed with no further action.

30.     During October 2021, Tilley was notified that the King County, Washington Prosecuting Attorney's Office had declined to charge Tilley with any crime. The declination decision was dated October 8, 2021.

31.     After learning of the declination, Tilley notified his supervisor and the special agent in charge ("SAC") of the Seattle Division.

32.     On November 4, 2021, Tilley was placed on paid administrative leave again.

**B.     SUSPENSION OF TILLEY'S SECURITY CLEARANCE AND CONSEQUENT INDEFINITE SUSPENSION FROM EMPLOYMENT WITHOUT PAY.**

33.     On November 19, 2021, Tilley was notified that his security clearance to access classified national security material was suspended. He was ordered to return to the Seattle Division and return his FBI property.

34.     On November 22, 2021, Tilley received a letter dated November 17, 2021, from Jennifer Leigh Moore, Acting Executive Assistant Director, FBI Human Resources Branch with a return address of "U.S. Department of Justice, Federal Bureau of Investigation, Washington, DC 20535-0001." In the letter, Moore notified Tilley that the basis for the suspension of his clearance was the same complaint which the King County Prosecuting Attorney's Office had recently declined to prosecute and the Seattle Police Department had closed with no further action. Moore did not provide any information or evidence to support the claim Tilley engaged in misconduct.

35.     Moore also wrote, "The suspension of your clearance will continue until the FBI

investigation of the underlying matter is completed. At that time, your clearance status will be re-evaluated, and you will be advised accordingly."

36.     Moore's letter further notified Tilley that the

suspension of an employee's access to classified information results in loss of access to controlled FBI space. Accordingly, while your clearance is suspended, you will not be allowed access to FBI space. In addition, you are reminded that while on suspension, you may not represent yourself as an FBI employee, and your authority to fulfill the duties and responsibilities of your position is also suspended.

37.     On November 22, 2021, Tilley also received a letter dated November 18, 2021, from Katherine Brideau, the Unit Chief for the FBI's Performance Appraisal Unit, Human Resources Division with a return address of "U.S. Department of Justice, Federal Bureau of Investigation, Washington, DC 20535-0001." The letter notified Tilley of the following:

This letter advises that you are suspended indefinitely from duty and pay effective upon receipt of this letter. This action is based upon the decision of Jennifer Leigh Moore, Federal Bureau of Investigation (FBI) Security Programs Manager, Human Resources Branch, to suspend your Top Secret security clearance and access to classified information. Your suspension will be in effect pending the final resolution of all security actions including investigation, adjudication, and any related appeals regarding your eligibility for access to classified information, and/or a determination of whether or not further administrative action is warranted.

It has been a longstanding, essential condition of employment that employees of the FBI be able to obtain and maintain a Top Secret security clearance. By the above referenced letter, you were notified of the decision to suspend your access to classified information, and as such, your access to controlled FBI space is not permissible at this time. In addition, you are reminded that while on suspension your authority to fulfill your duties and responsibilities of your position is also suspended. As such, you may not represent yourself as an active or on-duty employee of the FBI. Further, you are not authorized to perform any of the official duties previously granted to you by statute or by virtue of your employment with the FBI. Since you will not be allowed access to FBI space, there are no duties for you to perform. Therefore, you do not meet an essential condition of employment.

38.     On November 24, 2021, Tilley again verified with the King County Prosecuting Attorney's Office that it had declined to charge him with any crime.

39.     Tilley received his last paycheck from the FBI during February 2022.

40.     Tilley has been suspended indefinitely without pay from the FBI for more than two years with no deadline, he has not received the evidence the FBI relied upon to suspend his security clearance that resulted in this indefinite suspension, nor has he had a hearing to refute the allegations made against him. Tilley has no administrative remedy to challenge his indefinite suspension without pay. Furthermore, Tilley was not able to access any medical benefits offered to him as a federal employee.

41.     According to records in this Court, the FBI has engaged in a similar lengthy indefinite suspension without pay in at least one other case. In *Lee v. Barr*, the FBI suspended an employee indefinitely without pay from December 2014 until the FBI's final determination to seek the revocation of his security clearance in August 2016. No. 19-2284-DLF (D.D.C. Jan. 6, 2020) (DOJ Access Review Committee report attached as exhibit to Plaintiff's motion to amend complaint) [ECF Doc. 12-4] at 1, 3. DOJ's Access Review Committee made a final decision revoking the employee's clearance on May 30, 2018, almost four years after his suspension began. *Id.* at 1.

## III. FBI AND DOJ RESTRICTIONS ON EMPLOYEES OUTSIDE EMPLOYMENT AND RELEVANT STATUTES.

42.     Under 5 U.S.C. § 2105, a federal "'employee'…means an officer and an individual who is—(1) appointed in the civil service…; (2) engaged in the performance of a Federal function under authority of law or an Executive act; and (3) subject to the supervision of an individual named by paragraph (1)…."

43.     Although the FBI informed Tilley that he was suspended from duty without pay in its November 18, 2021, letter, the FBI also informed him that "[a]dditional information concerning your eligibility to engage in outside employment and/or receive unemployment compensation is

provided….” Enclosed with the November 18, 2021, letter was an FBI FD-331 Special Agent Request to Engage in Outside Employment Proxy Form. Part II of the form is a series of questions about an employee's proposed outside employment. The last question in the section notifies an employee that, “If you <u>selected</u> 'Yes' to any of the above questions, you must consult an [Office of Integrity and Compliance (“<u>OIC</u>”)] Ethics Attorney before proceeding.” (underlining in original). It further asks the employee to “certify that you have talked to an OIC Ethics Attorney regarding any of the above 'Yes' answers.”

44.     Part III of the FBI FD-331 form is as follows: “The undersigned employee seeks Bureau authority to engage in outside employment. The employee acknowledges the following:” with check boxes by each of the following statements:

> That any proposed outside employment shall not interfere with Bureau duties, will not be incompatible with the FBI's National Security or Law Enforcement mission, nor will it inhibit, hinder or impede the faithful performance of my duty.

> That any approval made here does not allow solicitation of any approved business at any time on Bureau premises.

> That my outside employment will not be started until officially approved.

> That the proposed outside employment will not capitalize on my official position nor the FBI name, initials, Seal or Badge.

> That I cannot engage in outside employment during any portion of a day when I am on sick leave, without prior FBI approval.

> That if approved, I will notify my supervisor when the employment terminates or any facts regarding the employment are materially changed. I will provide written notice of the termination of any approved employment.

> That I cannot submit to a polygraph examination in connection with the proposed outside employment.

> That if authority to enter into this employment is not granted, I will not communicate the FBI decision to any prospective employer.

That the approval can be withdrawn by the approval authority and will expire one year after the final approval date unless renewed.

That the approval does not amount to endorsement of the employer nor does it amount to approval of any behavior prohibited by other law, regulation or rule.

45.     The instructions for the FD-331 form also state in part that "[r]egulation and statutes prevent the Division Head or the [Human Resources Division Assistant Director] from approving outside employment: With a foreign government (or foreign government controlled entity like a university); involving the practice of law; law enforcement outside the FBI; requiring a polygraph; or employment with another Federal Agency."

46.     The instructions for the FD-331 form also state, "Inform the employee of the decision within 15 business days of providing all required information."

47.     Various federal regulations apply to DOJ employees who seek to engage in outside employment.

48.     Under 5 C.F.R. § 2635.802, "Employees may not engage in outside employment or any other outside activity that conflicts with their official duties."

49.     Under 5 C.F.R. § 3801.106(b)(1),

No employee may engage in outside employment that involves:

(i) The practice of law, unless it is uncompensated and in the nature of community service, or unless it is on behalf of himself, his parents, spouse, or children;

(ii) Any criminal or habeas corpus matter, be it Federal, State, or local; or

(iii) Litigation, investigations, grants or other matters in which the Department of Justice is or represents a party, witness, litigant, investigator or grant-maker.

50.     Under 5 C.F.R. § 3801.106(c)(1), "An employee must obtain written approval before engaging in outside employment, not otherwise prohibited by paragraph (b) of this section

that involves: (i) The practice of law; or (ii) A subject matter, policy, or program that is in his component's area of responsibility."

51.     Under 5 U.S.C. § 5533(a), "an individual is not entitled to receive basic pay from more than one position for more than an aggregate of 40 hours of work in one calendar week (Sunday through Saturday)." Under 5 U.S.C. § 5531(2), "'position' means a civilian office or position (including a temporary, part-time, or intermittent position), appointive or elective, in the legislative, executive, or judicial branch of the Government of the United States…."

52.     Under 5 U.S.C. § 6329b, agencies can place employees on investigative leave where the employees continue to receive pay but do not perform duties during the course of an investigation. Through different levels of internal approval, the agency can approve 130 workdays of administrative and investigative leave. *Id.* §§ 6329b(b)(1),(b)(3)(A),(c). After that 130-workday period, the agency can approve additional 30-day periods of leave, as long as it notifies congressional committees of those extensions. *Id.* § 6329b(d)(1).

53.     Although both of the Plaintiffs have been under investigation since the suspension of their security clearances, neither have been placed on paid investigative leave.

## IV. FBI CLAIMS THAT PLAINTIFFS ARE SUBJECT TO FBI AND DOJ OUTSIDE EMPLOYMENT RESTRICTIONS THOUGH THEY ARE SUSPENDED FROM DUTY AND THE FBI IS NOT PAYING THEM.

### A. FBI Refuses to Forward Tilley's Request for a Waiver from Outside Employment Regulations to DOJ, and He Encounters Difficulties Obtaining Law Enforcement Jobs.

54.     On December 9, 2021, Tilley's supervisor told him that he should look for another job because the FBI is "hanging [him] out to dry," or words to that effect.

55.     Even though the FBI is not paying the Plaintiffs during their indefinite suspension, it requires them to abide by DOJ's outside employment rules, which limit their possible

employment, such as barring them from taking a law enforcement position. *See* 5 C.F.R. 3801.106(b)(1). Those rules also require them to get approval from the FBI before taking a new job.

56.     On January 10, 2022, Tilley began the process to get approval for outside employment. Tilley has never been provided with a document that the request was either approved or denied. However, Tilley was notified by his supervisor that the Seattle Division SAC could not approve the request. The supervisor further stated the SAC would not provide a reason for why he could not approve of the FD-331, but if he were in Tilley's position, he would take the job.

57.     Although he was uncertain if the FBI would take action against him for taking a new job, on January 24, 2022, Tilley began employment with a government contractor. If Tilley had waited for FBI approval, he would have been forced to resign from the FBI to subsist.

58.     Tilley's position with the contractor required a security clearance and, in contrast with Tilley's position with the FBI, access to classified material to perform his required duties. Tilley notified his new employer of the FBI's suspension of his security clearance, but the employer could not confirm the suspension. His clearance was still listed as active in the government system that tracks security clearances. Tilley was consequently granted a clearance for his new job by the government agency contracting with Tilley's employer. Thus, he had access to classified material in the contractor position, even though the FBI suspended him from duty because it determined he could not have such access.

59.     During August 2022, Tilley applied with the Orange County, California Sheriff's Department for a position as a trainee deputy sheriff. During the application process, Tilley acknowledged the ongoing inquiry by the FBI and OIG into the allegation against him. Despite explaining the circumstances, the length of the investigation, and Tilley's statement of his

innocence, a background investigator told him that neither the Orange County Sheriff's Department, nor any other police agency, would hire him with a pending internal investigation. The background investigator said that Tilley would need to be cleared before pursuing any employment opportunities with the sheriff's department. The background investigator further explained that it was difficult to obtain information from federal agencies. The background investigator recommended that Tilley avoid applying to any other agency until the completion of the FBI/OIG investigation.

60.     On September 22, 2022, Tilley was notified that the government agency customer of his employer had decided to remove Tilley from the contract on which he was working pursuant to the personal conduct clause of the contract. Based upon conversations with his employer and documents obtained via a Freedom of Information Act request, Tilley believes he was removed from the contract because of the FBI's suspension of his security clearance and conversations his employer had with a representative from the FBI. Due to the FBI suspending Tilley's clearance, his employer could not find another position for him.

61.     On October 14, 2022, Tilley was released from his employment with the contractor and was, once again, left without gainful employment.

62.     On or about December 12, 2022, Tilley was given an offer of employment by the Office of the Inspector General of the Los Angeles County Metropolitan Transportation Authority ("LA Metro") contingent upon a background check.

63.     As required by the FBI, on December 13, 2022, Tilley submitted a request for outside employment to the FBI, even though the FBI was not paying him and he had no duties with the FBI.

64.     On December 19, 2022, Tilley began employment with LA Metro.

65.     On January 6, 2023, Tilley was notified that he was required to speak with an FBI

ethics attorney from the OIC about his request. He spoke with FBI OIC attorney Curtis Steuber about his position at LA Metro. After the conversation, Steuber sent an email to Tilley memorializing the conversation, including the following statement, "Last but not least, to manage expectations, we spoke about the likelihood that this proposed employment will be denied under DOJ Supplemental Regulations pursuant to 5 CFR 3801.106 which prohibits outside employment that includes criminal matters at the Federal, state, or local levels." During the conversation with Steuber, Tilley emphasized this was not a law enforcement position, nor would he have any law enforcement powers. He explained that if an administrative employment investigation uncovered criminal activity, Tilley would refer the matter to local law enforcement, just like any other citizen would if they observed criminal activity.

66.    On February 16, 2024, after being directed by FBI officials from the Seattle Division, Tilley submitted a request for a waiver of outside employment requirements under 5 C.F.R. § 3801.106(b)(2).

67.    In early 2024, Tilley tried to apply for his previous position as a state trooper with the Arizona Department of Public Safety ("DPS"). As part of the application process, DPS asked the applicant, "Are you currently the subject of any investigation including administrative, criminal or AZ POST?" Tilley learned that if he answered yes to that question, his application would be automatically disqualified.

68.    In April 2024, Tilley was asked by Seattle Division officials (on behalf of OIC) if he would submit a letter on company letterhead from his current employer stating he would not be involved in any criminal cases. They also asked for salary information for the position. Tilley explained to Seattle Division officials he would not be comfortable submitting a letter from his current employer because it would interfere with that employment. Tilley was further concerned

about putting the FBI in contact with his current employer, because he believes the FBI caused him to lose his previous job with a government contractor. Furthermore, Tilley already provided a statement to OIC stating he will not be involved in any criminal matters. Tilley communicated this to Seattle Division officials.

69.     On July 2, 2024, Tilley was informed by Seattle Division officials that the OIC would not forward his application to DOJ. The Seattle Division officials told Tilley they supported his application and made that clear to OIC.

70.     Throughout the outside employment request process, Tilley has notified the FBI he would immediately resign from the outside employment or withdraw his outside employment request, if reinstated by the FBI.

**B.     Kobelia Takes Another Job After FBI Tells Him It Will Not Be Approved and Is Removed from the Rolls of FBI.**

71.     On February 14, 2024, Kobelia communicated with OIC attorney Curtis Steuber about taking a position with the U.S. Bureau of Prisons ("BOP").

72.     Even though the FBI was not going to be paying Kobelia when he began working with BOP, Steuber communicated to Kobelia that there was a general prohibition against dual compensation.

73.     Steuber also communicated to Kobelia that all FBI employees are also subject to 5 C.F.R. § 3801.106(b), and that Kobelia might be prohibited from working for BOP under § 3801.106(b)(1)(ii) or (iii).

74.     Steuber wrote to Kobelia, "It's my understanding that any employee who is suspended, even if without pay, are still technically considered employees of the FBI and thus the Ethics policy would apply to them. However, as I noted, each case is unique and heavily dependent on the facts. As to whether or not other policies no longer apply to employees who are suspended,

I am not sure. If you decide to cease employment with the FBI and work solely for the Bureau of Prisons then you would not need to submit the FD-331 and seek approval from the Ethics office and [Human Resources Division]."

75.    Later, Steuber communicated to Kobelia that the FBI would not approve employment with BOP.

76.    Because he knew the FBI would not approve the BOP employment and he was suspended from the FBI indefinitely without pay, Kobelia did not submit a request for approval of the employment.

77.    On April 21, 2024, Kobelia began employment with BOP. His first paycheck for his work with BOP was delayed because—even though the FBI was not paying him—he was administratively listed as an FBI employee. After BOP officials communicated with the FBI, BOP received an SF-50 form from the FBI indicating that Kobelia had transferred to another federal agency. Kobelia had not resigned his FBI employment, nor had he requested a transfer from the FBI. When Kobelia took the BOP job, he was suspended from duty with the FBI and the FBI was not paying him. He took the BOP job so he could subsist and continue his law enforcement career.

78.    On August 14, 2024, through counsel, Kobelia received an email indicating that the FBI Human Resources Division considered Kobelia transferred to another federal government agency, which resulted in his separation from FBI employment, effective April 21, 2024. "Thus, he was removed from the rolls of the FBI."

## **COUNT ONE**

**Application of DOJ and FBI Outside Employment Rules to Plaintiffs Who Have Been Suspended from Duty Without Pay Violates the Fifth Amendment.**

79.    The foregoing allegations are re-alleged and incorporated herein by reference.

80.    Tilley has been suspended from duty with the FBI since November 22, 2021.

81.     Kobelia has been suspended from duty with the FBI since September 20, 2023.

82.     The Plaintiffs have no official duties with the FBI.

83.     While suspended from duty, the Plaintiffs are not being paid by the FBI.

84.     Although the FBI has the authority to place the Plaintiffs on investigative leave with pay under 5 U.S.C. § 6329b, the FBI has not done so.

85.     The FBI removed Kobelia from the "rolls" of the FBI, because he took a job with BOP while suspended from duty without pay by the FBI.

86.     "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment…." *Greene v. McElroy*, 360 U.S. 474, 492 (1959).

87.     The FBI and DOJ's requirements that the Plaintiffs follow the outside employment rules applicable to active paid employees while they are suspended from duty without pay violates the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

## COUNT TWO

**Application of DOJ and FBI Outside Employment Rules to Plaintiffs Who Have Been Suspended from Duty Without Pay Violates the First Amendment.**

88.     The foregoing allegations are re-alleged and incorporated herein by reference.

89.     Tilley has been suspended from duty with the FBI since November 22, 2021.

90.     Kobelia has been suspended from duty with the FBI since September 20, 2023.

91.     The Plaintiffs have no official duties with the FBI.

92.     While suspended from duty, the Plaintiffs are not being paid by the FBI.

93.     Although the FBI has the authority to place the Plaintiffs on investigative leave with pay under 5 U.S.C. § 6329b, the FBI has not done so.

94.     While it is not paying the Plaintiffs and while they have no official duties with the

FBI, the FBI claims that it has the authority to prevent the Plaintiffs from taking a law enforcement job or any job which could result in their participation in criminal matters.

95.     Specifically, on January 6, 2023, Tilley was notified that he was required to speak with an FBI OIC attorney about his request to work for LA Metro. He spoke with FBI OIC attorney Curtis Steuber about his position at LA Metro. After the conversation, Steuber sent an email to Tilley memorializing the conversation, including the following statement, "Last but not least, to manage expectations, we spoke about the likelihood that this proposed employment will be denied under DOJ Supplemental Regulations pursuant to 5 CFR 3801.106 which prohibits outside employment that includes criminal matters at the Federal, state, or local levels." During the conversation with Steuber, Tilley emphasized this was not a law enforcement position, nor would he have any law enforcement powers. He explained that if an administrative employment investigation uncovered criminal activity, Tilley would refer the matter to local law enforcement, just like any other citizen would if they observed criminal activity.

96.     In April 2024, Tilley was asked by Seattle Division officials (on behalf of OIC) if he would submit a letter on company letterhead from his current employer stating he would not be involved in any criminal cases. They also asked for salary information for the position. Tilley explained to Seattle Division officials he would not be comfortable submitting a letter from his current employer because it would interfere with that employment. Tilley was further concerned about putting the FBI in contact with his current employer, because he believes the FBI caused him to lose his previous job with a government contractor. Furthermore, Tilley already provided a statement to OIC stating he will not be involved in any criminal matters. Tilley communicated this to Seattle Division officials.

97.     On July 2, 2024, Tilley was informed by Seattle Division officials that the OIC

would not forward his application to DOJ. The Seattle Division officials told Tilley they supported his application and made that clear to OIC.

98.     On February 14, 2024, Kobelia communicated with OIC attorney Steuber about his proposed employment with BOP. Steuber communicated to Kobelia that all FBI employees are also subject to 5 C.F.R. § 3801.106(b), and that Kobelia might be prohibited from working for BOP under § 3801.106(b)(1)(ii) or (iii), which prohibit outside employment involving "(ii) Any criminal or habeas corpus matter, be it Federal, State, or local; or (iii) Litigation, investigations, grants or other matters in which the Department of Justice is or represents a party, witness, litigant, investigator or grant-maker."

99.     Kobelia took employment with BOP to allow himself to subsist and continue his law enforcement career.

100.    The FBI removed Kobelia from the "rolls" of the FBI, because he took a job with BOP while suspended from duty without pay by the FBI.

101.    "[C]itizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 573 U.S. 228, 231 (2014).

102.    The FBI and DOJ's requirements that Plaintiffs not take a law enforcement job or any job that could involve a criminal matter while they are suspended from duty without pay violates their First Amendment rights to free speech and association, and the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

## **COUNT THREE**

**FBI and DOJ Application of Outside Employment Rules to the Plaintiffs Who Have Been Suspended from Duty Without Pay Violates the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A),(C).**

103.    The foregoing allegations are re-alleged and incorporated herein by reference.

104.    Tilley has been suspended from duty with the FBI since February 17, 2022.

105.    Kobelia has been suspended from duty with the FBI since September 20, 2023.

106.    The Plaintiffs have no official duties with the FBI.

107.    While suspended from duty, the Plaintiffs are not being paid by the FBI.

108.    FBI officials have compelled Tilley to comply with FBI and DOJ outside employment rules.

109.    The FBI removed Kobelia from the "rolls" of the FBI, because he took a job with BOP while suspended from duty without pay by the FBI.

110.    Although the FBI has the authority to place the Plaintiffs on investigative leave with pay under 5 U.S.C. § 6329b, the FBI has not done so.

111.    Under 5 U.S.C. § 2105, federal "'employee'…means an officer and an individual who is—(1) appointed in the civil service…; (2) engaged in the performance of a Federal function under authority of law or an Executive act; and (3) subject to the supervision of an individual named by paragraph (1)…."

112.    Under 5 U.S.C. § 5533(a), "an individual is not entitled to receive basic pay from more than one position for more than an aggregate of 40 hours of work in one calendar week (Sunday through Saturday)." Under 5 U.S.C. § 5531(2), "'position' means a civilian office or position (including a temporary, part-time, or intermittent position), appointive or elective, in the legislative, executive, or judicial branch of the Government of the United States…."

113.    While the Plaintiffs are suspended without pay—although they have not lost their procedural and administrative rights to their employment—they are not employees under 5 U.S.C. § 2105, and the FBI and DOJ's requirements that the Plaintiff follow outside employment rules

applicable to active paid employees violate the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A),(C).

## <u>COUNT FOUR</u>

**The FBI's Decision Regarding Tilley's December 13, 2022, Request for Outside Employment Has Been Unlawfully Withheld or Unreasonably Delayed in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1).**

114.    The foregoing allegations are re-alleged and incorporated herein by reference.

115.    On or about December 12, 2022, Tilley was given an offer of employment by the Office of the Inspector General of LA Metro contingent upon a background check.

116.    As required by the FBI, on December 13, 2022, Tilley submitted a request for outside employment to the FBI, even though he was suspended from duty with the FBI and the FBI was not paying him.

117.    On December 19, 2022, Tilley began employment with LA Metro.

118.    On January 6, 2023, Tilley was notified that he was required to speak with an FBI OIC attorney about his request. He spoke with FBI OIC attorney Curtis Steuber about his position at LA Metro. After the conversation, Steuber sent an email to the Plaintiff memorializing the conversation, including the following statement, "Last but not least, to manage expectations, we spoke about the likelihood that this proposed employment will be denied under DOJ Supplemental Regulations pursuant to 5 CFR 3801.106 which prohibits outside employment that includes criminal matters at the Federal, state, or local levels." During the conversation with Steuber, Tilley emphasized this was not a law enforcement position, nor would he have any law enforcement powers. He explained that if an administrative employment investigation uncovered criminal activity, Tilley would refer the matter to local law enforcement, just like any other citizen would if they observed criminal activity.

119.    On February 16, 2024, after being directed by FBI officials from the Seattle

Division, Tilley submitted a request for a waiver of outside employment requirements under 5 C.F.R. § 3801.106(b)(2).

120.    In April 2024, Tilley was asked by Seattle Division officials (on behalf of OIC) if he would submit a letter on company letterhead from his current employer stating he would not be involved in any criminal cases. They also asked for salary information for the position. The Plaintiff explained to Seattle Division officials he would not be comfortable submitting a letter from his current employer because it would interfere with that employment. Tilley was further concerned about putting the FBI in contact with his current employer, because he believes the FBI caused him to lose his previous job with a government contractor. Furthermore, Tilley already provided a statement to OIC stating he will not be involved in any criminal matters. Tilley communicated this to Seattle Division officials.

121.    On July 2, 2024, Tilley was informed by Seattle Division officials that OIC would not forward his waiver application to DOJ.

122.    The FBI and DOJ's failure to make a decision regarding Tilley's outside employment request since December 13, 2022, particularly while Tilley has been suspended indefinitely from duty without pay, violates the Administrative Procedure Act, 5 U.S.C. § 706(1).

## **RELIEF**

WHEREFORE, Plaintiffs respectfully request relief as follows:

123.    A declaration that the Defendants' actions violated the United States Constitution.

124.    A declaration that Plaintiffs are not subject to FBI and DOJ outside employment regulations while suspended indefinitely from duty without pay.

125.    An injunction prohibiting the FBI and DOJ from requiring employees who are

suspended indefinitely from duty without pay to obtain permission to accept employment and/or follow the requirements in 5 C.F.R. § 3801.106, or any other regulation restricting their ability to obtain gainful employment.

126.    An injunction prohibiting any action against the Plaintiffs for accepting employment while they were suspended without pay.

127.    An injunction ordering Kobelia's reinstatement to the "rolls" of the FBI.

128.    Costs and reasonable attorney fees.

129.    Such other relief as the Court deems just and equitable.

September 4, 2024                            Respectfully Submitted,

                                            */s/ Michael S. Zummer*
                                            Michael S. Zummer (La. Bar No. 31375)
                                            2337 Magazine St. Unit D
                                            New Orleans, LA 70130
                                            Telephone: (504) 717-5913
                                            E-mail: afbilitigation@gmail.com
                                            *Counsel for Plaintiffs*